IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SUZANNE MCCURLEY, *et al.* § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIV. ACTION NO. 1:17-cv-01208-SS |
| § | |
| VOLKSWAGEN GROUP OF AMERICA, INC.; § | |
| *et al.* § | |
| § | |
| Defendants. § | |

## DEFENDANT VOLKSWAGEN AG'S MOTION TO DISMISS BASED ON INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5), Defendant Volkswagen Aktiengesellschaft ("VWAG"), a German corporation headquartered in Wolfsburg, Germany, files this Motion to Dismiss Based on Insufficient Service of Process and Lack of Personal Jurisdiction, and would show the Court as follows:

### I.
#### PRELIMINARY STATEMENT

This action is one of thousands of related actions pending in federal district courts across the country involving the well-publicized allegations that VWAG and certain of its affiliates installed emissions-control "defeat devices" in diesel vehicles sold or leased in the United States. The instant action has been brought by fifty-one Texas citizens, one California citizen, and one citizen of the Province of British Columbia who allegedly acquired Volkswagen-brand diesel vehicles in Texas.  *See* Ex. 1 ¶¶ 8-57 (Pls' 1st Am. Pet.).

Plaintiffs originally filed this case on October 11, 2017, in the 95th Judicial District Court of Dallas County, Texas.  Plaintiffs' Original Petition named VWAG, Volkswagen Group of

America, Inc. ("VWGoA"), an affiliate of VWAG, , and a number of Texas Volkswagen dealerships as defendants. Plaintiffs amended their Petition once, resulting in their operative pleading, Plaintiffs' First Amended Petition, filed on November 28, 2017, which retained the same named defendants as the Original Petition and contained identical allegations. *See* Ex. 1 (Pls' 1st Am. Pet.). VWGoA then transferred the case as a "tag-along" action to a Texas multidistrict litigation ("MDL") proceeding pending in the 353rd Judicial District Court in Travis County, Texas. On December 27, 2017, VWGoA removed the case to this Court on the basis of federal question jurisdiction.

While this case was pending in the 95th Court, Plaintiffs attempted to serve the Original Petition on VWAG in two ways: First, by serving VWAG's affiliate, VWGoA, at VWGoA's headquarters in Herndon, Virginia. According to Plaintiffs, VWGoA, a wholly-owned subsidiary of VWAG, is VWAG's "agent" for service of process. *See* Ex. 2 (12/11/17 Officer's Return of Service for VWAG, hereinafter "12/11 Return"). Second, Plaintiffs attempted to serve VWAG by serving Corporation Service Company ("CSC"), a Delaware Corporation that acts as registered agent in Texas for a number of companies, including VWGoA (but *not* VWAG). *See* Ex. 3 (12/27/17 Officer's Return of Service for VWAG, hereinafter the "12/27 Return").

The purported "service" was clearly ineffectual with respect to VWAG for several reasons: First, VWGoA is not the agent (registered or otherwise) for service of process on VWAG in Texas or otherwise "in charge" of any VWAG business in Texas within the meaning of Section 17.043 of the Texas Civil Practices and Remedies Code, for the reasons stated in VWGoA's Motion to Strike Attempted Service filed in the Texas MDL proceeding. *See* Ex. 4 (VWGoA's Motion to Strike Attempted Service). Second, even if VWGoA were "in charge" of VWAG business in Texas, under Texas law notice of the lawsuit must still be *transmitted abroad* to VWAG in

Germany. TEX. CIV. PRAC. & REM. CODE § 17.045(c). Thus, because "the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad," service under the Hague Service Convention (the "Hague Convention" or "Convention") is *mandatory*, and the purported service on VWAG through VWGoA was ineffective. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988). Third, service on CSC was ineffective because CSC is not VWAG's agent for receipt of service of process in Texas. *See* Ex. 5 (Affidavit of Caitlin Monigle).

Additionally, Plaintiffs' operative pleading is devoid of any allegations that VWAG had any purposeful contacts that were specifically directed at Texas. There are no allegations, for instance, that VWAG marketed, advertised, or sold the subject vehicles to Plaintiffs in Texas. To the contrary, VWAG manufactured the vehicles and sold them to VWGoA. VWGoA, in turn, marketed, advertised, and sold the vehicles in the United States. Thus, Plaintiffs' theory of jurisdiction appears to rest entirely on an illusory "agency" relationship between VWAG and its affiliate company, VWGoA (*see* Ex. 1 ¶¶ 63-64 (Pls' 1st Am. Pet.)), notwithstanding that VWAG is a distinct and separate corporate entity with its own officers, directors, employees and products. *See Gonzalez v. Bank of Am. Ins. Servs., Inc.*, 454 F. App'x 295, 300 (5th Cir. 2011) (citation omitted) (there is a presumption that a subsidiary, even one that is wholly-owned, is independent of its parent for jurisdictional purposes which can only be overcome if the plaintiff provides clear evidence to the contrary); *see also Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 219 (5th Cir. 2000) (subsidiary company's contacts with Texas could not be attributed to foreign parent corporation). The burden is on Plaintiffs to establish personal jurisdiction over VWAG. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). Yet, Plaintiffs have failed to allege any facts—instead, Plaintiffs merely allege only conclusory statements that this Court

should disregard—that would support their theory of an agency relationship, or that VWAG has any contacts at all with Texas sufficient to establish personal jurisdiction over VWAG. Therefore, because this Court lacks jurisdiction over VWAG, this Motion should be granted for this additional reason.

## II.
### LAW & ANALYSIS – INEFFECTIVE SERVICE OF PROCESS (RULE 12(b)(5))

**A.     Legal Standard**

"A motion to dismiss pursuant to Rule 12(b)(5) turns on the legal sufficiency of the service of process. The party making service has the burden of demonstrating its validity when an objection to service is made." *Holly v. Metro. Transit Auth.*, 213 F. App'x 343, 344 (5th Cir. 2007) (citing *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)); *see also Sandoval v. Am. Laser Skin Care, LLC*, 2015 WL 518801, at *7 (W.D. Tex. Feb. 2, 2015).

Here, the defect in service is facially apparent from both the 12/11 Return and the 12/27 Return, plus well-settled Texas law. Plaintiffs thus cannot meet their burden that service was effective. In any event, VWAG has also established the impropriety of service through evidence, as described more fully below.

**B.     VWGoA Is Neither an Agent for nor "In Charge" of VWAG Business in Texas**

In the Texas MDL, VWGoA filed a Motion to Strike Attempted Service, explaining that it is not the agent (registered or otherwise) for service of process on VWAG in Texas or otherwise "in charge" of VWAG business in Texas (which does not exist) for purposes of TEX. CIV. PRAC. & REM. CODE § 17.043.[1] Rather than restate all those points here, VWAG hereby incorporates VWGoA's briefing in full. *See* Ex. 4 (VWGoA's Motion to Strike Attempted Service).

---

[1] While Plaintiffs' allegations regarding service on VWAG through VWGoA do not appear to invoke Section 17.043, VWAG reiterates that it does not do business in Texas and therefore Section 17.043 is inapplicable. *See* TEX. CIV.

### C. Under Texas Law, Plaintiffs Must Effectuate Service on VWAG in Accordance With the Hague Convention

Even if, however, VWGoA were "in charge" of VWAG business in Texas (it is not), service is not complete under Texas law until "a copy of the process and notice of the service [is] immediately *mailed to the nonresident or the nonresident's principal place of business*." TEX. CIV. PRAC. & REM. CODE § 17.045(c) (emphasis added). Here, VWAG, a German corporation, is headquartered in Wolfsburg, Germany. *See* Ex. 1 ¶ 58 (Pls' 1st Am. Pet.). Because service is not complete under Texas law until documents are transmitted abroad, the Hague Convention applies, and Plaintiffs may not avoid the Convention's mandatory service provisions through purported service on VWGoA. Since there is no dispute that Plaintiffs did not serve VWAG pursuant to the Convention's mandatory service provisions, service is ineffective for this additional reason, as more fully described below.

#### a) The Hague Convention is Mandatory Where, as Here, Service Requires the Transmittal of Documents Abroad.

The Hague Convention, established in 1964, is a multilateral treaty on international judicial procedure. It accomplishes several objectives: (1) to provide plaintiffs with a clear roadmap for serving process abroad; (2) to ensure that defendants sued in foreign jurisdictions receive proper notice of suits filed against them; and (3) to facilitate proof of service in foreign jurisdictions. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698-99 (1988) (citing 3 1964 Conference de la Haye de Droit International Prive, Actes et Documents de la Dixieme Session (Notification) 75-77, 363 (1965) (3 Actes et Documents); 1 B. Ristau, International Judicial Assistance (Civil and Commercial) § 4-1 (1984 and 1 Supp. 1986) (1 Ristau)).

The Convention requires each signatory country to establish a central authority to receive

---

PRAC. & REM. CODE § 17.043; *see also* Ex. 1, ¶ 58 (Pls' 1st Am. Pet.). As discussed below, even if VWGoA was "in charge" of VWAG business in Texas, Plaintiffs have failed to complete service under Texas law.

requests for service of documents by a method prescribed by the internal law of the receiving country or by a method designated by the requester and compatible with that law. *See* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, Art. 5. Litigants may employ a number of service methods under the Hague Convention, unless the receiving nation has specifically objected or opted out of use of those methods. *Id*. Arts. 8-10. Because the Republic of Germany has objected to the methods of service outlined by Articles 8 and 10 of the Hague Convention, service on Germany's Central Authority is the exclusive means of service on a German corporation pursuant to the Hague Convention. *See* Declarations of Republic of Germany, *available at* https://www.hcch.net/en/states/authorities/notifications/?csid=402&disp=resdn.

The Convention is mandatory in all cases to which it applies. *Schlunk*, 486 U.S. at 705. The Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." 20 U.S.T., at 362. Because the "Convention does not specify the circumstances in which there is 'occasion to transmit' a complaint 'for service abroad,'" the Supreme Court has concluded that "[i]f the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies." *Schlunk*, 486 U.S. at 700.

    **b)**     <u>**Plaintiffs Must Transmit Documents Abroad in Order To Properly Serve VWAG Under Texas Law.**</u>

Plaintiffs have not identified a single statute in Texas which provides for service on a foreign manufacturer by serving a domestic agent, even if VWGoA was such an agent (it is not, *see* Part II.C of this Motion). The only service statute which could even conceivably apply here is section 17.043 of the Texas Civil Practices and Remedies Code, which permits serving a person "in charge" of the nonresident's business in Texas. Even were this Court to presume Plaintiffs

intended to invoke section 17.043 without expressly mentioning it, and assuming further (and incorrectly, *see* Part III.C-D of this Motion) that VWAG "does business" in Texas and VWGoA is "in charge" of that business, Plaintiffs' presumed theory of service ignores the very clear requirement of Texas law that "a copy of the process and notice of the service must be immediately *mailed to the nonresident or the nonresident's principal place of business*." TEX. CIV. PRAC. & REM. CODE § 17.045(c) (emphasis added).  In the case of VWAG, this means mailing the process and notice to Wolfsburg, Germany (*i.e.*, "transmittal of documents abroad"), thereby requiring Hague Convention procedures to be followed in order for service to be effective.  Such procedures indisputably were not followed here.  Service was therefore ineffective.

Plaintiffs appear to fundamentally misconstrue *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988), to justify their attempted "service" on VWAG via VWGoA.  *Schlunk* stands for the proposition that, in cases where state law (such as Illinois law, as in *Schlunk*) involuntarily transforms a wholly-owned subsidiary into an agent of a foreign corporation *and* requires no further transmittal of documents, the Hague Convention is not applicable because no "service abroad" is necessary in that instance.  486 U.S. at 700.  It does *not* stand for the broader proposition that it is always permissible to circumvent the Hague Convention by serving a foreign corporation's wholly owned subsidiary.[2]  In Texas, unlike in Illinois, any service on a nonresident defendant must be sent to the defendant by mail, which, for VWAG (headquartered in Germany), means "the transmittal of documents abroad," thereby triggering the requirements of the Hague Convention.  *Id.*; *see also* TEX. CIV. PRAC. & REM. CODE § 17.045(c) ("If the person in charge of a nonresident's business is served with process under Section 17.043, a copy of the process and

---

[2] In fact, the *Schlunk* Court held that "[b]y virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." 486 U.S. at 699.

notice of the service *must be immediately mailed to the nonresident or the nonresident's principal place of business*.") (emphasis added).

The discussion of this point in *Kim v. Frank Mohn A/S,* 909 F. Supp. 474, 479 (S.D. Tex. 1995), is illustrative:

> The Plaintiff here contends service through the Defendant's Houston subsidiary was proper under section 17.043 of the Texas long-arm statute; thus, the Hague Convention is inapplicable. Section 17.043 provides that, in an action arising from a nonresident's business within Texas, the nonresident may be served by serving "the person in charge, at the time of service, of any business in which the nonresident is engaged in this state if the nonresident is not required by statute to designate or maintain a resident agent for service of process." Tex. Civ. Prac. & Rem. Code Ann § 17.043. **However, if service is made pursuant to section 17.043, a copy of the process and notice of service must immediately be mailed to the nonresident or the nonresident's principal place of business.** Tex. Civ. Prac. & Rem. Code Ann § 17.045. Texas courts strictly construe the long-arm statute, and consistently conclude that failure to strictly comply with the statute by forwarding a copy of the process to the nonresident defendant as required by section 17.045 deprives the court of jurisdiction over the defendant. *See, e.g., Whitney v. L & L Realty Corp*., 500 S.W.2d 94 (Tex. 1974); *Roberts v. Niekerk*, 730 S.W.2d 341 (Tex. Ct. App.-- Dallas 1987, writ ref'd n.r.e.).
>
> As noted above, the Hague Convention applies in all cases "where there is occasion to transmit a judicial or extra judicial document for service abroad." In *Schlunk*, the Supreme Court defined "service" as used in the Convention as referring to "a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." 486 U.S. at 700. The sufficiency of the delivery is measured by the law of the forum state. *Id*. Because Texas courts hold that failure to mail a copy of the process to the nonresident defendant pursuant to section 17.045 deprives the court of jurisdiction over the defendant, it is apparent that the notice required by section 17.045 is an integral part of the "service" authorized by section 17.043 and as defined by the Court in *Schlunk*.
>
> **Because the Defendant in this case could be properly served under Texas law only by transmitting judicial documents to the Defendant abroad, the Hague Convention is applicable.** Articles 2 and 3 of the Convention require signatory countries to designate a central authority to receive requests for service, and require that a request for service of judicial documents and the documents to be served be forwarded to the central authority. Therefore, by sending a copy of the process directly to the Defendant, the Plaintiff did not comply with the Hague Convention, and the Plaintiff's attempted service is ineffective.

*Kim,* 909 F. Supp. at 479 (emphasis supplied); *see also* discussion in 2-32 Dorsaneo, Texas Litigation Guide § 32.10 (2015):

> The Hague Convention is not applicable if a foreign defendant can be served under state law without transmitting documents abroad [see Hague Convention, Art. 1]. **In Texas, a foreign defendant can be properly served only by transmitting judicial documents to the defendant abroad** [see Tex. Civ. Prac. & Rem. Code §§ 17.043, 17.045—copy of process served on person in charge of business and notice of service must also be mailed to nonresident defendant]. **Therefore, this exception to the Hague Convention is precluded under the Texas long-arm statute** [*Kim v. Frank Mohn A/S*, 909 F. Supp. 2d 474, 478–479 (S.D. Tex. 1995) (rejecting plaintiff's argument that service on Norwegian corporation through its Texas subsidiary was proper and that Hague Convention therefore did not apply)].

A succinct description of the "key ingredient" that must be present for *Schlunk* to apply is found in a case out of the Eastern District of Louisiana discussing *Schlunk*'s inapplicability there:

> Contrary to Plaintiffs' assertion, the *Schlunk* case does not allow Plaintiffs to resort to service under state law as a way of circumventing the Convention's requirements. **Nor does *Schlunk* stand for the broad proposition that service upon a subsidiary in this country is effective against a foreign parent corporation.** The Hague Convention only applies "where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Schlunk*, 486 U.S. at 699, 108 S. Ct. at 2108 (citing 20 U.S.T. at 362). *Schlunk* merely recognizes that when the law of the forum state deems the local subsidiary as the parent's agent, then service on the parent can be made locally thereby eliminating the need to transmit documents abroad. In such a case, where no documents need be transmitted abroad, then the Convention, pursuant to its express terms, does not apply.
>
> In *Schlunk*, the local subsidiary was deemed, **by operation of Illinois state law**, to be the involuntary agent of the parent. **Thus, the key ingredient that must be present in order for Plaintiffs to avail themselves of *Schlunk* is a provision under Louisiana state law which would involuntarily "transform" CN/IC into CNR's agent for service of process**. As CNR points out, there is no support for such a concept under Louisiana law and the Fifth Circuit has yet to address the issue. Plaintiffs' reliance on *Schlunk* is therefore misplaced.

*Blades v. Ill. Cent. R.R.,* 2003 U.S. Dist. LEXIS 3823, at *8 (E.D. La. Mar. 12, 2003) (emphasis added).

Thus, Plaintiffs have not only failed to demonstrate that they served someone "in charge" of VWAG business, but they have also overlooked the fact that notice of the purported service

must still be provided to VWAG, a nonresident, under Texas law. TEX. CIV. PRAC. & REM. CODE § 17.045(c). Because this notice "must be immediately mailed to the nonresident or the nonresident's principal place of business," *id.*, documents must be sent to Germany, and Hague Convention procedures must therefore be followed. *Schlunk*, 486 U.S. at 700.

**D.      CSC is Not the Registered Agent of VWAG**

Foreign corporations that register to do business in Texas must maintain a registered agent in Texas to receive service of process. TEX. BUS. ORG. CODE ANN. § 5.201(a)(1). The registered agent "is an agent of the entity on whom may be served any process, notice, or demand permitted by law to be served on the entity." *Id.* § 5.201(b)(1). Apparently relying on these provisions, Plaintiffs attempted to serve VWAG by personally serving CSC, purportedly as VWAG's "registered agent." Ex. 3 (12/27 Return).

As an initial matter, VWAG is not registered to do business in Texas and, thus, is not required to maintain a registered agent to receive service of process in Texas. More importantly for the purposes of this Motion, "CSC is *not* the registered agent for [VWAG] in the State of Texas." Ex. 5 at ¶ 6 (Affidavit of Caitlin Monigle) (emphasis added).[3] As a result, and not surprisingly, when Plaintiffs purported to serve VWAG through CSC, CSC issued a "Rejection of Service of Process" and sent it to Plaintiffs' counsel via regular mail, informing Plaintiffs of the insufficient service. *Id.* ¶ 8, Ex. B. Because Plaintiffs cannot effectuate service on *VWAG* by serving *VWGoA's* registered agent in Texas (CSC), VWAG's Motion should be granted.

---

[3] Caitlin Monigle is the Service of Process Research Coordinator in the Litigation Management Department of CSC. Ex. 5 ¶ 2. It is her job to "access and review business records of CSC relating to receipt of service of process." *Id.* Monigle accessed and reviewed the applicable service business records here before making her determination that CSC could not accept service on behalf of VWAG, and accordingly issued a rejection letter. *Id.* ¶¶ 4-8.

## III.
## LAW & ANALYSIS – LACK OF PERSONAL JURISDICTION (RULE 12(b)(2))

### A.  Legal Standard

"A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution." *Gardner v. Forest River, Inc.*, 2017 WL 2869432, at *2 (W.D. Tex. July 5, 2017) (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)). Pursuant to the Due Process Clause, a court lacks jurisdiction over a nonresident defendant unless that defendant maintains sufficient minimum contacts with the forum state. *See Cantwell Family Tr. (1998) v. Hyten*, 2015 WL 5165283, at *1 (W.D. Tex. Sept. 2, 2015) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L.Ed. 95 (1945); *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)). "A defendant's 'minimum contacts' may give rise to either specific personal jurisdiction or general personal jurisdiction, depending on the nature of the suit and defendant's relationship to the forum state." *Id*. (citing *Freudensprung*, 379 F.3d at 343). The plaintiff has the burden to make a prima facie showing that personal jurisdiction is proper. *Ritter*, 768 F.3d at 431 (citation omitted). The Court may only accept Plaintiffs' jurisdictional allegations if they are uncontroverted. *Id.* "In considering a motion to dismiss for lack of personal jurisdiction a district court may consider 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).

### B.  VWAG Is Not Subject to General Jurisdiction in Texas

The Supreme Court has set a high bar for general jurisdiction. The test for whether general jurisdiction exists "is not whether a foreign corporation's in-forum contacts can be said to be in

some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (internal quotation omitted).  Aside from the forum where a corporation is incorporated or maintains its principal place of business, corporations are considered "at home" only in exceptional circumstances. *See id* at 761 n.19.

In *Bauman*, for instance, the plaintiffs filed suit in California against a German corporation (Daimler AG, or "Daimler") for conduct occurring entirely abroad. *See id*. at 751-52. The plaintiffs argued there was general jurisdiction over Daimler because of continuous and systematic business contacts an indirect subsidiary of Daimler, Mercedes-Benz USA, LLC ("MBUSA"), had with California.  *See id*. at 751-52, 760-61. Importantly, because Daimler did not object to plaintiffs' assertion that MBUSA was subject to "all-purpose jurisdiction" in California, the Supreme Court assumed, "for the purposes of this decision only, that MBUSA qualifies as at home in California." *Id*. at 758. Additionally, and without directly addressing whether agency law permits a Court to attribute a domestic subsidiary's in-state contacts to the parent, the Court determined that even if MBUSA's contacts were attributable to Daimler, general jurisdiction did not exist over the parent, a global company. *Id*. at 760. The Court noted that "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts. General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id*. at 762 n.20.

MBUSA's specific contacts with California included "multiple California-based facilities, including a regional office in Costa Mesa, a Vehicle Preparation Center in Carson, and a Classic Center in Irvine. . . . [Additionally, o]ver 10% of all sales of new vehicles in the United States [took] place in California, and MBUSA's California sales account[ed] for 2.4% of Daimler's

worldwide sales." *Id*. at 752. Based on these contacts, however, the Court held that "[e]ven if we were to assume MBUSA is at home in California, and further to assume MBUSA's contacts are imputable to Daimler, there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." *Id*. at 760.

Plaintiffs' acknowledgment that VWAG is a German corporation with its principal place of business in Germany (Ex. 1 ¶ 58 (Pls' 1st Am. Pet.)) is fatal to any claim of general jurisdiction over VWAG. Plaintiffs have not alleged nor can Plaintiffs establish that VWAG has any contacts in Texas, much less contacts that constitute the "exceptional case" that would render VWAG "at home" in Texas above and beyond the contacts described in *Bauman*. Accordingly, Plaintiffs cannot establish general jurisdiction over VWAG.

### C.      VWAG Is Not Subject to Specific Jurisdiction in Texas for This Action

The Due Process Clause mandates that a court may only exercise *specific* jurisdiction over a nonresident defendant when that defendant has "purposefully availed" itself of the privileges and benefits of conducting business in the foreign jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id*. at 475 (internal citations omitted). Moreover, specific jurisdiction requires that "the contacts proximately result from the action by the defendant *himself* that create a 'substantial connection' with the forum State." *Id*. (citations omitted). This is true where the "defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum [such that] he manifestly has availed himself of the privilege of conducting business there." *Id*. at 476. Further, specific jurisdiction only exists where "the defendant's contacts with

the forum 'arise from, or are directly related to, the cause of action.'" *Revell v. Lidov*, 317 F.3d at 470 (quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) (internal quotation marks omitted)). A nonresident may purposefully avoid jurisdiction by structuring its transactions so as to neither profit from the forum's laws nor be subject to its jurisdiction. *See Burger King*, 471 U.S. at 473.

Moreover, in the parent-affiliate context, there is a "presumption that a subsidiary, even one that is wholly-owned, is independent of its parent for jurisdictional purposes." *Gonzalez*, 454 F. App'x 295 at 300 (citation omitted). "This presumption can only be overcome by the plaintiff with *clear evidence* that is sufficient to demonstrate that the subsidiary is the alter ego of the parent." *Id.* (citation omitted) (emphasis added). In *Gonzalez*, the Court reiterated the factors to be considered when determining whether a parent company could be held amenable to personal jurisdiction because of the acts of a subsidiary: "(1) the amount of stock owned by the parent of the subsidiary; (2) if the two corporations have separate headquarters; (3) if they have common officers and directors; (4) if they observe corporate formalities; (5) if they maintain separate accounting systems; (6) whether the parent exercise complete authority over the subsidiary's general policy; and (7) whether the subsidiary exercise complete authority over its daily operations." *Id.* (citations omitted).

As an initial matter, this Court should disregard Plaintiffs' conclusory allegation of an agency relationship between VWAG and VWGoA. Ex. 1 ¶ 63-64 (Pls' 1st Am. Pet.); *see, e.g.*, *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (conclusory allegations will not suffice to prevent motion to dismiss); *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (plaintiff must plead specific facts, not conclusory allegations, to avoid dismissal); *Drs. Bethea, Moustoukas v. St. Paul Guardian Ins.*, 376 F.3d 399, 403 (5th Cir. 2004) (conclusory

allegations or legal conclusions masquerading as factual conclusions not sufficient to prevent dismissal); *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (court does not accept conclusory allegations, unwarranted deductions, or legal conclusions); *Jones v. Alcoa Inc.*, 339 F.3d 359, 363 n.4 (5th Cir. 2003) ("conclusory allegations or unwarranted deductions of fact" not accepted as true); *Kane Enters. v. MacGregor (USA)*, 322 F.3d 371, 374 (5th Cir. 2003) (same).

Further, Plaintiffs have produced no evidence—and have wholly failed to allege any facts at all—which would support a finding that VWAG is an alter ego of VWGoA. To the contrary, VWAG has separate headquarters from VWGoA (Ex. 1 ¶¶ 58-59 (Pls' 2nd Am. Pet.)), has different officers and directors (*see* Ex. 4 at Ex. A ¶ 6 (VWGoA's Motion to Strike Attempted Service)), observes corporate formalities (*see id*), maintains separate accounting systems (*see id*), exercises no control over VWGoA's policies (*see id*), and has no control over VWGoA's daily operations (*see id*). Because Plaintiffs cannot establish VWAG is the alter ego of VWGoA, any acts of VWGoA – such as VWGoA's marketing and sale of the vehicles in Texas – may not be attributed to VWAG to establish jurisdiction.

Even if Plaintiffs were relying on something other than the acts of an affiliate company to establish jurisdiction over VWAG, the U.S. Supreme Court has held that a product manufacturer's placement of a product into the stream of commerce alone does not establish sufficient minimum contacts with the forum to establish specific jurisdiction:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product

into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 112 (1987).

In *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011), the Supreme Court expanded on the principles announced in *Asahi*. The Court concluded that the so-called "stream-of-commerce" doctrine could not displace the general rule that "the exercise of judicial power is not lawful unless the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Nicastro*, 564 U.S. at 877. Thus, in *Nicastro*—a products liability case where the plaintiff sought to exercise jurisdiction in New Jersey over a foreign manufacturer—the Supreme Court held that jurisdiction was lacking when the only jurisdictional facts the plaintiff relied on were that "[t]he distributor agreed to sell [defendant's] machines in the United States; [the defendant's] officials attended trade shows in several States but not in New Jersey; and up to four machines ended up in New Jersey." *Id*. at 886. Justice Breyer, concurring, added that the facts showed "no 'regular . . . flow' or 'regular course' of sales in New Jersey; and there [was] no 'something more,' such as special state-related design, advertising, advice, marketing, or anything else." *Id*. at 889 (Breyer, J., concurring).

Here, Plaintiffs have conflated their allegations by referring to VWAG, VWGoA, and the Texas Volkswagen dealership defendants together, without distinction, using the terms "Defendants," "Volkswagen," or "VW." Ex. 1 at ¶¶ 63-64, 69-72, 78-84, 88-101, 106-129, 132-154, 157-160 (Pls' 1st Am. Pet.). However, aside from allegations of an illusory agency relationship of which Plaintiffs have presented no evidence (as required under Fifth Circuit precedent), Plaintiffs' First Amended Petition contains no specific allegations that VWAG designed the subject vehicles specifically for the market in Texas, advertised the vehicles in Texas, established channels for providing regular advice to customers in Texas, or marketed the vehicles

through a distributor who has agreed to serve as the sales agent in Texas.[4] Therefore, exercising personal jurisdiction over VWAG in this case would violate the Due Process Clause.

Because the exercise of jurisdiction over VWAG would violate the Due Process Clause, the Court need not consider the Texas long-arm statute, which presents an even higher bar than the above constitutional test. Nonetheless, Plaintiffs have also failed to allege that jurisdiction over VWAG is authorized by Texas's long-arm statute.

### D.  VWAG Has not Engaged in Any of the Activities Enumerated in Texas's Long-Arm Statute

Texas's long-arm statute authorizes jurisdiction over a nonresident defendant who "does business in Texas." *Southwind Capital Partners, LLC v. Burkman*, 2016 WL 8258899, at *1 (W.D. Tex. Mar. 28, 2016). Section 17.042 of the Texas Civil Practices and Remedies Code delineates three circumstances which qualify as "doing business" in Texas, these are: if the nonresident "(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in [Texas]; (2) commits a tort in whole or in part in [Texas]; or (3) recruits Texas residents, directly or through an intermediary located in [Texas], for employment inside or outside [Texas]." TEX. CIV. PRAC. & REM. CODE § 17.042(1)-(3).

Plaintiffs' operative Petition states simply that "[t]his Court has personal jurisdiction over Defendants because the Defendants conduct business in Texas; conducted business with each plaintiff herein in the State of Texas and have sufficient minimum contacts with Texas." Ex. 1 ¶ 7

---

[4] Even assuming VWGoA constitutes a distributor under Texas law, distributors are not de facto agents of manufacturers. *See Elk River, Inc. v. Garrison Tool & Die, Ltd.*, 222 S.W.3d 772, 782-783 (Tex. App.—Dallas 2007, pet. denied). "The essential feature of agency is the right of control." *Id*. at 782 (citing *Schott Glas v. Adame,* 178 S.W.3d 307, 315 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). "The right of control includes the right to dictate the means and details of the agent's performance." *Id*. Thus, in *Elk River*, the Court found there was sufficient evidence that no agency relationship existed between a domestic Texas distributor and foreign manufacturer when the manufacturer, among other things, had no control over the distributor's distribution, did not share ownership or management with the distributor, and the plaintiff presented no contrary evidence showing the manufacturer had any right of control. *Id*. at 782-83.

(Pls' 1st Am. Pet.). These conclusory allegations should be disregarded by this Court consistent with the Fifth Circuit precedent stated in Part III.C. of this Motion.

Alternatively, while the conclusory nature of Plaintiffs' allegations makes it difficult to determine which subsection of the Texas long-arm is being relied upon, Plaintiffs cannot establish long-arm jurisdiction under any subsection regardless. Given that there are no allegations that could possibly support subsection three, that subsection is inapplicable here and VWAG will focus solely on subsections one and two.

As for subsection one, Plaintiffs have only summarily alleged that Defendants conducted business with each Plaintiff in the State of Texas. Plaintiffs do *not* allege that *VWAG* sold Plaintiffs the subject vehicles, or otherwise entered into contracts with Plaintiffs to be performed in whole or in part in Texas.  Instead, Plaintiffs focus their lengthy allegations on a fraudulent scheme by all "Defendants" (without distinction) to withhold information about the "defeat devices" installed in diesel vehicles generally from the general public. *See generally* Ex. 1 (Pls' 1st Am. Pet.). Those general allegations do not support the conclusion that VWAG entered into contracts with these Plaintiffs regarding these vehicles to be performed in Texas. Therefore, Plaintiffs allegations fail under subsection one.

The second subsection of the long-arm statute requires a showing that VWAG committed a tortious act in Texas.  The only tort alleged by Plaintiffs is a general scheme of fraudulent conduct by all Defendants, involving diesel vehicles generally—without reference to the subject vehicles—which was directed at the United States generally, not Texas. *E.g.,* Ex. 1 ¶¶ 126-128 (Pls' 1st Am. Pet.). Yet, courts must assess each defendants' *forum* contacts individually and separately in order to determine whether "the requirements of [due process] [have been] met as to each defendant over whom [the] court exercises jurisdiction."  *Bristol-Myers Squibb Co. v. Superior Court of*

*California, San Francisco Cty.*, 137 S. Ct. 1773, 1783 (2017) (quoting *Rush v. Savchuk,* 444 U.S. 320, 332 (1980)); *see also Ragan & Massey, Inc. v. Voluntary Purchasing Groups, Inc.,* No. 4:09-CV-00039, 2009 WL 3157468, at *6 (E.D. Tex. Sept. 28, 2009) (defendant's contacts with Texas in his capacity as a corporate director insufficient to establish that defendant in individual capacity purposefully availed himself of Texas).  Plaintiffs allege no specific act by VWAG in Texas, nor do they allege that their causes of action arise from or are connected to any specific act by VWAG in Texas.  The allegations as to the second prong of the long-arm statute are, therefore, insufficient as well.

In sum, Plaintiffs have not met their burden to show that Texas's long-arm statute confers personal jurisdiction over VWAG.  The Court should therefore dismiss Plaintiffs' claims against VWAG under Rule 12(b)(2).  *See Alpine View Co*, 205 F.3d at 219 (trial court did not err in dismissing complaint when subsidiary company's contacts with Texas could not be attributed to foreign parent corporation and, thus, did not support a finding that parent was "doing business" in Texas).

## IV.
### CONCLUSION & PRAYER

For the reasons above, VWAG respectfully requests that this Court dismiss all claims against it, and for such other relief in law or in equity it may show itself justly entitled to.

Respectfully submitted,

/s/ *Richard A. Sayles*
Richard A. Sayles
State Bar No. 17697500
dsayles@swtriallaw.com
William S. Snyder
State Bar No. 00786250
wsnyder@swtriallaw.com
**SAYLES | WERBNER, P.C.**

A Professional Corporation
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
(214) 939-8700 (Telephone)
(214) 939-8787 (Facsimile)

**ATTORNEYS FOR DEFENDANT
VOLKSWAGEN AKTIENGESELLSCHAFT**

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of January 2018, a true and correct copy of this pleading was served in accordance with the Federal Rules of Civil Procedure on all counsel of record.

*/s/ Richard A. Sayles*
Richard A. Sayles